SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**WILLIAM M. McLAREN, OSB #143836**
William.McLaren@usdoj.gov
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | 6:24-cr-00023-MC |
| v. | **UNITED STATES' SENTENCING MEMORANDUM** |
| **VINCENT ALAN ELDER,** | |
| Defendant. | Sentencing: Oct. 23, 2025, at 11:00 a.m. |

    Vincent Alan Elder, 32, used social media to coerce, bribe, and entice minors across the country to create and send him child sex abuse material (CSAM).  The federal investigation revealed that he preyed upon children in Oregon, Florida, and New York using Snapchat and Instagram, among other platforms.  He sent electronic payments to the Florida victim, threatened the New York victim, and gave food, cash, and gifts to the Oregon victim, who also alleged being the victim of sexual assault by Elder.

    To hold Elder accountable, provide just punishment, protect the victims and other minors from further predation, and deter similar conduct, the parties jointly recommend a 288-month (24-year) prison sentence to be followed by a lifetime term of supervised release.  The parties' agreement also involves a resolution in Lane County, detailed below.  Finally, the parties recommend the Court issue $10,000 restitution awards to each of the three victims.

**United States' Sentencing Memorandum**      Page 1

## FACTUAL BACKGROUND

The facts are accurately set forth in paragraphs 22 through 34 and 38 through 39 of the presence investigation report ("PSR"), which is incorporated herein by reference.[1] To promote the anonymity and dignity of the victims, certain details of the offense, to include cities, names, and ages have been omitted from this public filing.

A.     **Initial Investigation, State Charges, and Federal Referral**

In early 2023, the Springfield Police Department (SPD) learned that a minor in Springfield, Oregon was contacted via social media by Elder. PSR ¶ 22. An SPD detective assumed the minor's identity, chatted with Elder, and executed a state search warrant for Elder's devices. PSR ¶ 23. As a result, Elder was charged and pleaded guilty to Luring a Minor and Online Sexual Corruption of a Child II in Lane County. He was sentenced to 30 days' jail and 36 months' probation in that case.

When reviewing Elder's online communications with other children who were not Oregon residents, SPD observed some potentially criminal interactions from the year prior with a minor in New York ("Minor Victim 1" or MV1). SPD contacted FBI, who began an investigation. In the months after Elder's state conviction, FBI learned he had victimized MV1 as early as January 2022.[2]

---

[1]     The government submits that the allegations detailed in PSR ¶¶ 35–37 do not form the basis of relevant conduct in this case. There are no federal charges assignable to the sexual assault allegations given that they did not occur in special or maritime jurisdiction and, instead, involve alleged conduct entirely within state jurisdiction. Additionally, the government respectfully notes that the extent of physical and corroborating evidence related to the allegations is insufficient to support the inclusion of these acts in the assessment of relevant conduct.

[2]     None of the federally-charged conduct is encompassed in or arising from the same nexus of facts as the state-charged conduct. The government separately obtained federal search warrants in support of the federal investigation. The minor victims at issue in Mr. Elder's federal charges do not include the minor at issue in Mr. Elder's state charge. Last, Mr. Elder's crimes against the victims in the federal case occurred prior to the predation in the state case.

B.     **Beginning of Federal Investigation and Discovery of New York Victim**

The FBI first interviewed MV1 in New York and learned that Elder primarily interacted with MV1 via social media platforms Snapchat and Instagram, was aware of MV1's age, and sought sexual images from MV1. PSR ¶ 24. When MV1 tried to cease contact, Elder's chats turned controlling then threatening. The primary chats are well-detailed in the PSR at ¶ 25 and not repeated here given that they reveal MV1's gender.

One evening—January 30, 2022—began with MV1 attempting to end communications with Elder, which led to him announcing ownership of MV1's body, acknowledging MV1's age, then listing all of the sexual images he had already obtained from MV1. When Elder threatened to involve MV1's mother or younger sibling, MV1 pleaded for their safety and offered to heed Elder's criminal requests. PSR ¶ 25. By the end of that night, MV1 had, again, provided Elder with CSAM using Instagram.

C.     **Federal Search Warrant and Discovery of Florida Victim**

In Fall 2023, after learning of Elder's victimization of MV1 in 2022, the FBI prepared a search warrant for a hotel room in which Elder was staying, as well as his devices and his person. They executed the warrant on November 8, 2023, and seized and began analyzing a series of devices. PSR ¶ 26.

Following the warrant, and upon gaining access to Elder's digital devices, federal agents discovered a host of images and videos of unidentified nude individuals. Many of the images agents found did not show their subjects' faces, leaving investigators with no way to identify their identity or ages, while other images had been altered to remove faces using a photo editor. PSR ¶ 27. However, agents were able to find one screenshot depicting CSAM in which a Snapchat username was depicted. PSR ¶ 28. Using that, agents were able to identify another potential minor victim in Florida ("Minor Victim 2" or MV2). PSR ¶ 28.

Agents sought payment app information—particularly PayPal and Venmo—related to Elder's accounts. That data reflected that, on June 8, 2023, the day the screenshot depicting MV2 was downloaded onto Elder's device, he sent two $500 payments to a Venmo user whose name matches MV2. PSR ¶ 30. The June payment predates Elder's state conviction, but the records reflect numerous payments in the months following. However, the agents' investigation, which included contact with MV2, reflects that Elder's victimization and use of MV2 to create CSAM did not extend into those months.

### D. Discovery of Oregon Victim Following Sexual Assault Allegations

On November 27, 2023, while agents were engaged in device review and preparing potential charges, they became aware of a forcible rape of a minor reported to the Eugene Police Department (EPD) involving disclosures of sexual assault against that minor carried out by a man named "Vince E." PSR ¶ 32. EPD notified FBI and investigators from both law enforcement entities convened to interview the minor ("Minor Victim 4" or MV4).[3]

On November 29, 2023, MV4 explained having been approached by a man online in 2022 via social media messaging platforms. PSR ¶ 32. The communications continued for months and included requests for CSAM in exchange for gifts (vape pens), food deliveries (using DoorDash), and bags of cash (including one bag left in a book exchange box near MV4's home. PSR ¶ 33. MV4 confirmed having sent CSAM to Elder, though investigators were unable to recover files. Agents did, however, locate the original communications between Elder and a previously unidentified social media account belonging to MV4. The chats began on November 23, 2022, a year prior to the forcible rape allegation. In the initial chats, Elder acknowledges

---

[3] A fourth minor, referred to in the investigation MV3, is not a charged victim based, in part, on minimal evidentiary support indicating that Mr. Elder victimized MV3. *See* PSR ¶ 28.

**United States' Sentencing Memorandum**                                                                                              **Page 4**

MV4's age and offers money in exchange for images. In chats some months later, Elder makes additional requests and he and MV4 begin discussing vape pens in exchange for CSAM.

Law enforcement compared MV4's disclosures to the contents of Elder's device. Agents found that Elder had MV4's personal information—name, email address, and phone number—saved in his DoorDash (food delivery) account, which corroborated MV4's statements about being provided food in exchange for CSAM. PSR ¶ 33.

Over the course of the next two days, agents worked to locate Elder and secure a federal arrest warrant. On December 1, 2023, he was found and arrested in Springfield, Oregon. PSR ¶ 38. Agents attempted to interview Elder, who lied about knowing MV2 and MV4. He was brought before the Honorable Mustafa T. Kasubhai, who ordered that he be detained pending trial. Elder has been in custody ever since.

## THE CHARGES & GUIDELINE COMPUTATIONS

On January 18, 2024, a grand jury returned a seven-count Indictment charging Elder with Using a Minor to Produce a Visual Depiction of Sexually Explicit Conduct and Attempt, Coercion and Enticement of a Minor and Attempt, and Possession of Child Pornography.

On July 29, 2025, Elder pleaded guilty to Counts One, Three, and Six of the Indictment. Counts One and Three involve Elder's use of MV1 and MV2 to produce CSAM, in violation of 18 U.S.C. § 2251(a), (e). Count Six involves Elder's coercion and enticement of MV4 to engage in unlawful sexual conduct, in violation of 18 U.S.C. § 2422(b). At sentencing, the government will move to dismiss Counts Two, Four, Five, and Seven.

Counts One and Three carry a mandatory minimum sentence of 15 years' imprisonment and up to 30 years' imprisonment, a maximum fine of $250,000, and a $100 special fee assessment. Count Five carries a mandatory minimum sentence of 10 years' imprisonment and up to life in prison, a maximum fine of $250,000, and a $100 special fee assessment.

The parties' agreed-upon guidelines calculations are set forth in the PSR at ¶¶ 44–70, laid out in the plea agreement at ECF No. 38 at ¶ 9, and outlined below:

| Guidelines | Amount |
|---|---|
| Base Offense Level [USSG § 2G2.1] | 32 |
| Minor older than twelve, younger than sixteen [§ 2G2.1(b)(1)(A)] | +2 |
| Use of computer [§ 2G2.1(b)(6)(B)(ii)] | +2 |
| Repeat and dangerous sex offender [§ 4B1.5(b)(1)] | +5 |
| Multiple minor victims [§ 2G2.1(d)(1) and 3D1.4] | +3 |
| Acceptance of responsibility [§ 3E1.1(a) and (b)] | -3 |
| **Government's Recommended Total Offense Level** | **41** |

Based on the factors set forth in 18 U.S.C. § 3553(a), and in negotiation with the various minor victims, their families, and to resolve this matter without requiring the testimony of the children, the parties respectfully recommend the court adopt and impose the 288-month (24-year) sentence anticipated in the plea agreement, to be followed by a lifetime term of supervised release. ECF No. 38 at ¶ 11. This would require a two-level downward variance.

Elder was also the subject of a Lane County investigation related to MV4's sexual assault allegations. As a result of the federal plea and sentencing, if Elder is sentenced to the recommended 24-year sentence of imprisonment, the Lane County District Attorney's Office has agreed not to bring additional charges against Elder in Lane County arising out of this investigation, known to that office at the time of this agreement. In effect, the sentence in this case will serve as a global resolution of Elder's state and federal exposure.

Finally, the government has been in contact (directly or by way of representatives) with MV1, MV2, and MV4, each of whom has agreed to assert and accept a restitution sum of $10,000. Elder's plea agreement provides that he agrees to those sums. *See* ECF No. 38 at ¶ 15; *see also* PSR ¶¶ 18, 40, 113. The government respectfully requests this Court impose a $10,000 restitution award as to MV1, MV2, and MV4.

**RECOMMENDATION**

Vincent Alan Elder's pattern of both provable and alleged victimization of minors across the United States demands the accountability and punishment of twenty-four years in prison. Though Elder presents with no criminal history beyond the state matter that post-dated the victimization in this case, he chose to take advantage of minors' vulnerability to satisfy himself, used an array of criminal methods to get what he wanted from children, and turned to threats when they did not obey. These significant crimes merit significant consequences.

The chats Elder used were clumsy, grotesque, pushy, and unrelenting. He often began with flattery—"Holy shit those pics god damn . . . [w]ould u send nudes for money?" If there was pushback—"Umm? I'm a minor . . . no thanks."—he persisted: "Cashapp 300$ for 3 pics." To a child of limited means and prior to working age, $300 is life changing. It may fund frivolities like clothes at the mall but, for some, it is the difference between eating and hunger. And Elder did not limit himself to cash. He used food and addictive vapes to bait his traps, too.

Elder did not stop at criminal quid pro quo. When a brave minor, MV1, found courage to try and end the cycle in early 2022, Elder declared his mastery: "I own that [age] year old [genitals]," "And that throat." When MV1 continued to push back, Elder turned his gaze to retribution: "If only [MV1's mother and younger sister] knew you were helping a guy twice your age cum. Bet they wouldn't be happy." This act of nonconsensual sharing of digital sexual media, defined as sextortion, is an increasing phenomenon not fully understood by the scientific and psychological community, but early studies suggest correlation with suicidal ideations, plans, and attempts, especially among early-teen minors.[4]

---

[4]     *See* Ankur Srivastava et al.*,* Digital Sexual Violence and Suicide Risk in a National Sample of Sexual Minority Adolescents, 38 J. Interpersonal Violence Issue 3–4 (2022), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC9850373/.

Elder was as persistent as he was indiscriminate. Though the age and demographic of the minors he targeted was consistent, the internet allowed him to commit his crimes with geographical freedom. The span of known minor victims outlines the corners of this country, and only Elder knows the extent of his victimization.

The jointly recommended sentence of 288 months will provide a resolution in this matter for those affected by Elder's choices, forego the need to require these minors to testify about their most traumatizing experiences, protect them and other minors from Elder's compulsive predation, promote deterrence for future similar activity, and assign accountability. A sentence of 288 months and a lifetime of federal supervision mirrors the seriousness of Elder's provable offenses. It will also serve as the basis for a global resolution in which the state will not pursue additional charges against Elder. Finally, this sentence will hopefully begin to provide some semblance of closure to the minors and families impacted by Elder's criminal choices.

## CONCLUSION

For the reasons stated above, the government recommends the Court adopt the parties' jointly recommended sentence of 288 months' imprisonment, impose a lifetime term of supervised, issue a $300 fee assessment, and assign $30,000 in restitution to the various victims.

Dated: October 15, 2025

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ William M. McLaren*
WILLIAM M. McLAREN
Assistant United States Attorney