Andrew L. Kraushaar, OSB #104285
Kolego and Kraushaar
Attorneys at Law
834 Pearl Street
Eugene, Oregon 97401
Telephone: (541)484-1066
Fax: (541)344-4151
Attorney for Vincent Alan Elder

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

UNITED STATES OF AMERICA,

        Plaintiff,

        v.

VINCENT ALAN ELDER,

        Defendant.

Case No. 6:24-cr-00023-MC

**DEFENDANT'S SENTENCING MEMORANDUM**

The Defendant, Vincent Alan Elder, submits this Sentencing Memorandum for the Court's consideration at his sentencing, presently set for October 23, 2025 at 11:30am.

### I. INTRODUCTION

Mr. Elder last appeared before this Court on July 29, 2025. At that appearance he entered pleas of guilty to Counts One, Three and Six of the Indictment. He has remained in-custody at FDC Sheridan since he was arrested in this matter on December 1, 2023.

Mr. Elder has reviewed the final Presentence Report and the Government's Sentencing Memorandum.

### II. BACKGROUND

Mr. Elder is 32 years old and was born Anchorage, Alaska. He grew up in Wasilla, Alaska and was raised by his mother and father. As a child, he witnessed

domestic violence and alcohol abuse within his home and he was verbally and physically abused by his mother. At the age of 8, he was sexually abused by an older male cousin on several occasions. Notably, Mr. Elder did not receive any treatment or counseling for these incidents and did not disclose his abuse until later in his life. Mr. Elder participated in the ACEs evaluation as part of the PSR interview and scored a six (PSR, page 17).

Mr. Elder moved to Springfield, Oregon with his father in 2005 after his parents separated and he has not had contact with his mother since that move. After moving to Oregon, Mr. Elder had a relatively normal upbringing, graduating from Springfield High School and taking classes at Lane Community College and University of Oregon. He worked as a heavy equipment operator at a local mill and steel yard until the Spring of 2023. During the Covid epidemic, Mr. Elder's father suffered a stroke and was placed in an assisted care facility. His father has since experienced diminished health and has now been diagnosed with Alzheimer's. Mr. Elder's former step-mother and half-sister have provided character letters for the court's consideration attached as Exhibit 1.

Mr. Elder had no prior criminal history until he was convicted of Luring a Minor by the State of Oregon on July 6, 2023. Mr. Elder consented to several searches during the Springfield Police Department's investigation into the Luring offense. Evidence discovered from those searches was provided to federal authorities for continued investigation and eventually led to this arrest and conviction in this federal matter. The Counts of conviction in this matter involve conduct that preceded his state court conviction.

**1. Offense Conduct**

As noted above, the investigation in this case began after the Springfield Police Department received a report that Mr. Elder had been inappropriately and illegally contacting a minor at Springfield High School. That investigation spawned a continued interstate investigation related to the Indictment in this case. The factual basis for the counts of conviction are detailed in the PSR. Of note, Mr. Elder never disseminated any of the illegal materials that came into his possession.

With respect to the allegations made against Mr. Elder by MV4, he fully admits and acknowledges his abhorrent conduct that forms a basis for his conviction in Count 6. However, he denies the uncharged allegations related to unlawful physical sexual contact that were made in November of 2023. As noted in the PSR, there was a "lack of corroborating evidence" related to this claim and formal charges were never filed against Mr. Elder. (*See* PSR, Paragraph 37, Page 10). Aside from this allegation, Mr. Elder was never alleged to have had direct personal contact with any other of the named victims.

### III. SENTENCING RECOMMENDATION

For the purposes of sentencing the defense agrees that Mr. Elder has a total offense level of 41 and a criminal history level of I (324-405 month Guideline Range). However, pursuant to the plea agreement reached by the parties reached the defense is jointly recommending that the court sentence Mr. Elder to 288 months on each count, concurrent to one another, with lifetime supervised release. Mr. Elder will be required to register as a sex offender and has agreed to pay each victim $10,000.00 in restitution.

### IV. CONCLUSION and 3553 FACTORS

When considering the sentencing factors set forth in 3553(a) the negotiated resolution is appropriate. Of note, Mr. Elder had no criminal history prior to the

investigation in this matter that led to his State court conviction and subsequently this federal matter. Mr. Elder was sexually abused as a child and grew-up surrounding by domestic violence and alcohol abuse. His mother was hostile towards him and rejected him. His difficult upbringing should be considered at sentencing.

Mr. Elder completed a psycho-sexual evaluation while in pretrial custody in this matter. Within that report, notably, Mr. Elder acknowledged the harm his behavior has caused, while also recognizing the victims' vulnerability due to their age. (See attached Exhibit 2, *Psychosexual Evaluation*, page 19). The psycho-sexual evaluation also opined that Mr. Elder's "relative risk for a future offense appears to be low[,]" and that "Mr. Elder possesses few risk factors, which also suggest amenability to future treatment specific to sexual deviancy." (*Id*, page 19-20).[1] Mr. Elder is remorseful for his conduct and motivated to engage in treatment to address this behavior.

288 months is a significant sentence that is commensurate to serious conduct. Mr. Elder accepts this punishment but also hopes to find rehabilitation while serving this sentence. As such, he requests that the court recommend that he be placed at a facility with a Sex Offender Management Program (SOMP), such as FCI Seagoville, FCI Englewood or any other facility that offers that designation.

DATED this 16th day of October 2025.

By:    /S/*Andrew L. Kraushaar*
        Andrew L. Kraushaar, OSB 104285
        Attorney for Vincent Alan Elder

---

[1] The entirety of the Psychosexual Evaluation was provided to the Government, however, giving the sensitive nature of its contents only Dr. Senn's "Conclusion and Recommendation" are included as Exhibit 2 to this filing.

Defendant's Sentencing Memorandum        Page 4 of 4

**From:** Charla Lee charlalee1960@gmail.com
**Subject:** Letter
**Date:** October 15, 2025 at 6:42 PM
**To:** kraushaarlaw@gmail.com

Dear Honorable Judge,

I'm Charla Lee and Vincent Elder is my ex-husband's son and my children's half brother. I've known Vincent since he was born. My ex-husband and I co-parented our children and I would babysit Vincent when he was little. When Vincent was in elementary school, he had a bad stutter and I would help him with his speech, calm him down, slow him down, think about what he wanted to say, and then say it. School was hard for him, but he kept at it and graduated in Oregon. He got his drivers license later than most, but finally got it. When his dad became ill, Vincent took care of him for years. I made sure that my children kept in contact with their little brother, even though he was in Oregon.

I understand the seriousness of the charges against Vincent and I'm glad he accepted a plea deal and I know that this has been a difficult experience for him.

I encourage Vincent to read and work out. I've told him when he gets to a final facility. He needs to seek counseling to better understand how we got here.

I am his power of attorney and I'm the only adult that he can rely on. He calls me at least once a week to talk we talk about family pets, and past memories. He has learned to laugh, share, and say "I love you."

I feel he has the potential to learn from his mistakes and come out and contribute to society.

Sincerely

Charla A. Lee

*Exhibit 1*
*Page 1 of 2*

Dear Honorable Judge,

My name is Trina Schachle, Vince Elder is my little brother. We have the same father but have different mothers. Well he was in school, he lived with me for about 2 months then I sent him to live with our father in Oregon. We lost touch for a bit but found each other a few years later on social media. He has always been kind and sweet, he was always very helpful and eager to learn new things. He helped me out with my son when he lived with me and was very kind to him and all the pets I had as well. After speaking with Vince on numerous occasions, I truly believe he recognizes the seriousness of his actions and the consequences that have come of it. I am proud of him for taking accountability and stepping up and doing what he knows is right. This has been very humbling and difficult experience for him. Vince has expressed genuine remorse and empathy for what he did. He has been proactive and utilizing his time going to classes and attending programs while being incarcerated. He has been using his time to better himself and learn how to be a healthy and productive member of society when he is released. I respectfully ask that you take this letter into consideration when determining Vincent Elders sentence. I believe he is learning from this experience and is trying his best to show up differently and be a better person day after day. Thank you for your time and consideration.

Sincerely,

Trina Schachle

*Exhibit 1*
*page 2 of 2*

       H9. Personality disorder
       H10. Prior supervision failure
       **Clinical (present)**
       C1. Lack of insight
       C2. Negative attitudes
       C3. Active symptoms of major mental illness
       C4. Impulsivity
       C5. Unresponsive to treatment
       **Risk management (future)**
       R1. Plans lack feasibility
       R2. Exposure to destabilizers
       R3. Lack of personal support
       R4. Noncompliance with remediation attempts
       R5. Stress

The factors that appear to apply in this case are as follows:

H4. Employment problems
H5. Substance use problems (Provisional)
C1. Lack of insight
R2. Exposure to destabilizers
R3. Lack of personal support
R5.  Stress

Mr. Elder is seen as a low risk for any future violent behavior.


CONCLUSIONS AND RECOMMENDATIONS

Vincent Alan Elder is accused of exchanging sexually explicit materials with multiple juvenile females throughout 2023, some within the State of Oregon and others in Florida State and New York State. The Federal Bureau of Investigation became involved with the case when it was discovered some of the alleged juvenile victims resided in other states. Mr. Elder is reported to have been explicitly aware of the age discrepancy between himself and his alleged victims while communicating with them. He is reported to have often incited the juveniles to send explicit media by sending money, items, and food.

Mr. Elder is also reported to have, at one point, forcibly raped a female juvenile he had interacted with previously through social media. Mr. Elder is stated consistently to have sent pictures of his penis to these individuals, asked for or demanded "nudes" from them, and is described as having been threatening, controlling, or exhibited stalker-like behaviors. When interviewed by authorities, Mr. Elder maintained that nothing he had done was illegal. Mr. Elder was charged with Attempting to Use a Minor to Produce Visual Depiction of Sexually Explicit Conduct by the United States District Court for the District of Oregon.

*Exhibit 2*

Mr. Elder said that after he was convicted of the state case, the authorities forwarded this phone to federal authorities, who were able to identify three of the girls who had sent him intimate images. Mr. Elder said that he had online relationships with various women and sometimes sent them money for clothes and food and felt that he was supportive of others. One of the girls was 17, and he was still in contact with her when the investigation went to the federal FBI. Mr. Elder said that he had never met any of the females he had flirted with on the internet. He never had any plans or made any arrangements to meet in person.

Mr. Elder was asked why this behavior was wrong. He stated that because these three girls were minors and too young. He stated that his behavior was taking advantage of them. "I knew it was wrong but I did it anyway because I was being reckless," he said. Mr. Elder acknowledges that he harmed the victims in this matter.

Family members describe Mr. Elder as having had a rough upbringing, including having had a mother who was only hostile and rejecting of him. Ms. Lee said that he is immature for his age and that his father was an alcoholic and drug abuser. "He's always stuttered and has been insecure then he had to take care of his dad due to dementia." Ms. Lee said that Mr. Elder has had some anger issues in the past, though he has never been violent to her knowledge.

Mr. Elder does not appear to be suffering from any major thought disorder. He does appear to experience some distress and anxiety, likely exacerbated by the current criminal charges. He appears to have approached psychological testing cooperatively. Personality testing suggests that Mr. Elder generally respects rules and authority figures. reports having cynical beliefs, distrust of others, and believing others look out only for their interests. He likely is hostile toward others and feels alienated from them; is distrustful, self-centered, and lacking in empathy; and has negative interpersonal experiences as a result of his cynical beliefs, self-centeredness, and hostility. Mr. Elder scored similarly to individuals who tend to be resilient in times of stress.

The SASSI results suggest a history of problematic use of alcohol or drugs and sensation-seeking and legal problems as a result of substance abuse. Mr. Elder's self-report and the description from collateral contacts contrast with these test results. Further testing is warranted.

Mr. Elder had limited social support from friends and family. Mr. Elder's reported social history is devoid of interpersonal violence. Mr. Elder denied any masturbatory fantasies of juveniles. Risk assessment tools suggest that he is at low risk for sexual, violent, or general recidivism.

Mr. Elder appears entirely appropriate for community-based services. The data does not suggest that he would benefit from or necessitate a secure setting or imprisonment. The ideal candidate for outpatient treatment and community supervision represents a moderate risk for a re-offense while having a moderate to high degree of deference. treatment and probation. Mr. Elder's relative risk for a future offense appears to be low.

Elder, P. 19

*Exhibit 2*

His deference is supported by his work history, nonviolent behavior, and good social support.  Mr. Elder possesses few risk factors, which also suggests amenability to future treatment specific to sexual deviancy.

Factors related to a lower level of risk include the following:

- Personality testing suggests that Mr. Elder does not endorse criminal behavior.
- Mr. Elder is of average intelligence and should be able to benefit from community-based treatment programming.

The following factors suggest a higher level of risk:

- The offensive behavior occurred multiple times.
- Mr. Elder has limited family and social support.
- Mr. Elder has limited experience with committed intimate relationships.

Mr. Elder should participate in weekly specialized treatment sessions with a certified sex offender treatment provider. Treatment should emphasize the following:

- Gain a full understanding of the offense behavior precursors.
- Complete a formal substance abuse evaluation and follow all recommendations, if any.
- Increase coping skills.
- Increase understanding of the feelings and behaviors associated with victims of sexual abuse. This includes connecting the use of child pornographic materials and the revictimization of children.
- Arousal reconditioning to address possible deviant sexual arousal.
- Development of an effective relapse prevention plan.
- Development of Mr. Elder's support system.
- Periodic polygraph testing to ensure compliance.
- Medical evaluation to determine if Mr. Elder's mood can be improved through antidepressant medication.

Any use of pornography while on probation should not be tolerated.  Computer use should be allowed if the computer has limited Internet access or is monitored to prevent contact with erotic material. Any use of controlled substances while on probation should be prohibited. Mr. Elder should have no unsupervised contact with minors.  Contact and other restrictions could be re-evaluated upon treatment compliance, progress, and collaboration with the supervising officer.  It is anticipated that Mr. Elder will be able to complete treatment in approximately two to three years.

Thank you for the referral of Vincent Elder.  Please contact me if further information is required.

*Exhibit 2*

Sincerely,


Scott A. Senn, Psy.D.
Psychologist
Sex Offender Treatment Specialist
Licensed in Oregon and Washington

SAS/meh

*Exhibit 2*